```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**JEFFREY DAJUAN ALLEN,**

      **Movant,**

**v.**                                    **Case No. 2:06-cv-00710**
                                          **Case No. 2:02-cr-00074**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

By Order entered June 17, 2008 (docket # 152), this matter was referred again to the undersigned for consideration of Movant's claim, contained in his Objections (# 150), that he was denied effective assistance of counsel at his first sentencing hearing because his attorney instructed him to lie about the shooting of Dennis Painter, resulting in the sentencing judge's finding that Movant was untruthful, and was not entitled to a downward adjustment of the sentencing guidelines for acceptance of responsibility. On July 24, 2008, the United States filed a response in opposition (# 154), supported by an affidavit by Movant's defense counsel, David Perry, and attached exhibits (Exhibit 1, # 154-2). On August 13, 2008, Movant filed a reply (# 155).

The lengthy procedural history of this case is detailed in the first Proposed Findings and Recommendation filed by the undersigned

in this case. In 2002, Movant was subject to prosecution in this court for being a felon in possession of a firearm and in the Circuit Court of Kanawha County (State v. Allen, No. 02-F-219) for malicious assault, and wanton endangerment, all of which related to the shooting of Dennis Painter, an off-duty West Virginia Department of Natural Resources officer. Movant was represented in both courts by retained counsel, David D. Perry, Esq.

Movant's remaining ground for relief is stated in his Objections as follows:

> Specifically, Attorney David Perry's instructions to Mr. Allen to deny that he had shot Dennis Painter, which resulted in the denial of an acceptance of responsibility reduction. More specifically, Mr. Perry instructed Mr. Allen to deny any and all relevant conduct associated with the possession of the firearm. * * *

(# 150, at 3.) As noted by Movant, he raised this claim as ground for relief four in his first § 2255 motion, Allen v. United States, No. 2:03-cv-2185:

> Petitioner was denied benefit of law at sentencing because he was forced to incriminate himself in order to receive an acceptance of responsibility departure. However, on the advice of counsel petitioner did not admit any of the relevant conduct associated with the possession of the firearm because counsel believed any statement made to secure the benefit of Federal sentencing law could be used against him in a related State prosecution. Thus petitioner was faced with a choice between a self-incrimination or forego the benefit of law available.
>
> Counsel was not cognizant of the fact that one constitutional right cannot be surrendered in order to assert another, and that any incriminating statements made could not be used against him in the State prosecution. Again, the Court did not clarify this conflict of rights when brought to the Court's attention

> at sentencing. The result of this was to deny petitioner the benefits of a lesser sentence for accepting responsibility. The lesser sentence would have reduced the Base Offense Level by three (3) points.

Id., # 69, at 8.

The United States relies upon Mr. Perry's affidavit and various statements attributed to Movant. The affidavit states:

> 1. I adamantly deny that I ever advised Mr. Allen to misrepresent fact, omit fact, or lie to the Court regarding his role and/or participation pertaining to the events at issue. * * *
>
> 3. The Defendant, Jeffrey Dajuan Allen, . . . denied responsibility for the acts at issue throughout each and every conversation I had with him.
>
> 4. The Defendant, Jeffrey Dajuan Allen, during the course of the case made several different statements regarding the events that occurred on the night in question. * * *
>
> 7. At all times during my representation of the Defendant, Jeffrey Dajuan Allen, both during the State and Federal proceedings, I zealously defended Mr. Allen's legal interests to the best of my ability and, upon providing facts sufficient to facilitate well-informed decisions, left each and every choice up to him.

(# 154-2, at 1-3.) The statements attributed to Movant are:

> Statement to Kanawha County Probation Officer [undated]: "I was wrongfully judged. I have been here since February 24, 2002. I was not officially charged until thirteen hours after we were pulled over. I did not fire the weapon, but it was the juvenile [name omitted] who fired two shots. No, it was not my gun. It belonged to [the juvenile]. I did not know the gun was there until it slid from under the passenger's seat. I had to plead to the Possession of a Weapon on the Federal side when they (the police) found the gun after I tossed it out the window and it was found."
>
> Handwritten statement by Movant [undated]: "[The juvenile] used the gun when he was affraid [sic] for his life, as I was for mind [sic; mine]. He dumped the gun in my car, when I did

3

not see him.  He lied about being in the car.  He lied about carrying a gun.  He lied about not shooting the gun."

<u>Movant's allocution to Judge Haden [read aloud at the first sentencing]:</u> "Yes, I admit being in possession of a handgun while on Supervised Release, and I feel that my pre-sentence report was done properly the first time pertaining to that.  However, Your Honor, what I do not understand is why three days before my sentencing hearing, I was sent a whole new presentence report, stating that I'm now charged with first degree-premeditated murder for the state."

(Exhibits A, B and C to Mr. Perry's affidavit, # 154-2, at 4-8.)

In response to Mr. Perry's affidavit, Movant states he prepared a letter "outlining the negotiations being suggested by trial counsel," which letter was given to Mr. Perry. (# 155, at 1.) He claims that the letter was "the suggested tactic of trial counsel," and that Movant read the letter to the probation officer preparing the presentence report.  <u>Id.</u>  The letter is quoted in its entirety below at pages 12-13.  He contends that "[i]t was blatant ineffective assistance of counsel to have negotiated two non-related cases in two separate venues based on different facts by attempting to create facts in one court that would contradict the facts in the other court, especially when he did such through the Defendant to create the conflicting facts."  <u>Id.</u>, at 3.

<u>Chronology</u>

2/24/02   Date of offense

2/26/02   Movant arrested and subsequently detained

3/26/02   Movant indicted by Federal grand jury

4/4/02    Movant arraigned in Federal court

5/6/02     Movant signed plea agreement with the United States

5/15/02    Movant entered Federal guilty plea

6/13/02    Movant entered not guilty plea in State court

8/12/02    First federal presentence report prepared

8/19/02    Beginning of first Federal sentencing hearing

8/27/02    Movant convicted by State jury of malicious assault and wanton endangerment

9/9/02     Movant sentenced in Federal court to 120 months

9/16/02    Judgment Order entered on Federal sentence (# 48)

10/1/02    Movant filed notice of appeal in State court

11/22/02   Movant sentenced in State court to concurrent terms of one to ten years (malicious assault) and one year (wanton endangerment), to run concurrently with his Federal sentence, with all appeal rights waived.

12/31/02   Final order in State court entered

<u>First Federal sentencing</u>

At his guilty plea hearing on May 15, 2002, the factual basis for the plea transpired as follows:

> THE COURT: How did you come to be in possession of this firearm?
>
> THE DEFENDANT: Your Honor, I was, yeah, as I was getting pulled by over by the St. Albans police, I was slowing down and the firearm slid from under the passenger seat and I panicked and tried to throw it out the window.
>
> THE COURT: And at that time had you been restored to your civil rights from a former conviction?

5

    THE DEFENDANT: I couldn't say.

    THE COURT: You had?

    THE DEFENDANT: No, sir, Your Honor.

    THE COURT: And did the government test fire the firearm and know it was capable of being fired?

    MR. LOEW: Yes, Your Honor. In fact, the United States would introduce evidence that the firearm was fired twice earlier in the day when an eye witness saw the defendant fire two shots in a passing vehicle on Route 25.

    The ballistics from the cartridge recovered from the scene matched the firearm that was recovered that the defendant threw out of the car in St. Albans.

    The United States would introduce evidence that the gun was recovered on February 24th of 2002 in St. Albans, that the firearm was again test fired when the ballistic test was done and that this specific firearm was manufactured in Wyoming. Therefore, it must have traveled in interstate commerce to be in St. Albans when the defendant possessed it.

    THE COURT: All right. Do you have any reason to disagree with the proffer made by the government, Mr. Perry?

    MR. PERRY: Your Honor, only for the record, I would like to state on my client's behalf that it seems as if the Court was inquiring as to whether or not the United States had test fired the weapon and the answer –

    THE COURT: I did.

    MR. PERRY: – and the answer that was offered by the United States of America, for lack of a better phrase, has contaminated the record. The United States is aware there is pending charges. The United States is aware that my client envelopes and welcomes the opportunity to challenge and prove his own innocence on those charges not in this court. But having said that, my client will not concede to anything other than what he's pleading to. And whether or not the state can prove these items, these issues, the United States, they are not going to have to.

> That's the reason we are here. And I think the only relevant inquiry, excuse me, the only relevant answer to the Court's inquiry was, yes, the United States did test fire the weapon after receiving it.
>
> THE COURT: All right, that's fine. I'm satisfied that the jurisdictional elements have been met and you maintain your plea of guilty to this charge; is that correct?
>
> THE DEFENDANT: Yes, sir, Your Honor.

(Tr. Plea Hrng, # 59, at 10-12.)

The Presentence Investigation Report ("PSI") prepared for then-Chief Judge Haden and dated August 12, 2002, attributes the following admission to Movant:

> The defendant admitted the offense of conviction, felon in possession of a firearm. He stated that when he was being followed by St. Albans Police Officer Kemper, he noticed the firearm under the passenger seat. He took the firearm and tossed it out the window. It is his belief the firearm was the property of [the juvenile] who had been a passenger in the vehicle earlier that day when the shooting occurred.

PSI, ¶ 15, at 5. The PSI reported that the juvenile gave statements that Movant was the shooter, and that ammunition for the firearm was found in Movant's residence. Id., ¶ 18, at 5. The report recommended that Movant be denied a downward adjustment for acceptance of responsibility. Id., ¶ 26, at 6.

The government objected to the PSI, asserting that the probation officer should have used a cross-reference to attempted murder, rather than to aggravated assault. Id., at 13.

The defense objected to the United States' position, and to the proposed denial of acceptance of responsibility. "Also Mr.

Perry stated the defendant has admitted the conduct related to the offense of conviction but must preserve his defense on the pending state charges." Id., at 14.

Movant's first sentencing hearing began on August 19, 2002. Mr. Perry presented argument as to Movant's position:

> MR. PERRY: Specifically, Your Honor, it is my client's position that he has, in fact, sufficiently allocuted on more than one occasion and has accepted responsibility within the content of his allocution. That being the case, in court on the record he allocuted to this Court and in addition my client has allocuted further to the United States Department of Probation. The allocution specifically in both instances relates like a nail – like hitting a nail on the head to the elements of the offense. As this Court said, the offense he's charged with is a convicted felon in possession of a firearm period. That means that the felon having – we are not questioning that. He's a convicted felon. The record speaks for itself. The Court has taken judicial notice of his previous conviction in Detroit. In possession of a firearm.
>
> My client, the record, will show, specifically said that he took the gun out of the floorboard of the car and threw it out the window. Therefore, logical reasoning would allow us to conclude that he had to have possession of the firearm when he threw it out the window.
>
> Now, in addition to this, my first line of concern, my second line of concern has to do with the Fifth Amendment implications. There are currently other charges pending. If I'm not mistaken, there are charges pending in the Kanawha County Circuit Court and some of the witnesses for that case are here today.
>
> The Fifth Amendment implications in Kanawha County Circuit Court are that to say anything further not only would be in direct opposition of what my client has told me happened, but it also would be a misrepresentation of a material fact. There is a trial date scheduled, August 26th, one week from today, begins in Judge Bloom's Court in Circuit Court. My client is charged there with a separate offense.

> Now, in this case – in that case, excuse me, the presumption of innocence remains with my client and he's clothed with it throughout the process. So for him to say – give testimonial evidence as the government would ask that he do to get the credit for acceptance of responsibility on the point reductions, he would have to, number one, misrepresent material facts and, number two, he would have to give himself up to another court through his testimony here in an instance that there is, and I will proceed, substantial exculpatory evidence that has been provided to me by the State of West Virginia as well as this government, the United States government, that I'm going to use in that case.
>
> I think it would be unfair to my client for me to have to tell this Court today, to proffer what that exculpatory evidence is. But I will be general enough to say it is scientific and there is witness statements that say my client didn't do what they say he did.
>
> Having said that, Your Honor, finally I think it definitely infringes upon the concept and the founding judicial tenants of fundamental fairness that the United States Government could, in lack of a better phrase, be so heavy handed that they could attempt to force my client to abrogate his Fifth Amendment right when they know full and well what the situation is.

(Tr. Disp. Hrng., # 59, at 29-31.) Judge Haden then continued the sentencing until September 9, 2002, after the State court trial. Id., at 35.

At the reconvened sentencing hearing on September 9, the United States presented the testimony of the shooting victim, Dennis Painter. After the parties argued as to whether aggravated assault or attempted murder was the appropriate cross-reference, Judge Haden overruled the defense objection, sustained the government's objection to the PSI as drafted, and used attempted first degree murder as the cross-reference. Id., at 63-64.

Judge Haden then heard argument on Movant's acceptance of responsibility.

> MR. PERRY: Your Honor, it remains my client's position that his statement to the United States Department of Probation was that he did have the weapon at the time and that he obviously is a convicted felon, therefore he was a convicted felon in possession of a firearm.
>
> I think I also did tell the state or the United States Department of Probation that he did throw the weapon at issue out the window, and it's still my client's position that that satisfactorily accomplishes his acceptance of responsibility.
>
> THE COURT: Well, but the other part of it is falsely denying relevant conduct and obviously here part of the relevant conduct is the shooting of Officer Painter.
>
> MR. PERRY: Your Honor, although I hate to do this at this time, I would also have to base my client's position on the fact that he has a pending appeal, a pending – that is just we have just filed the notice of intent to appeal and that for him to say any more would, in effect, cut the legs of his appeal right out from under him.[1]
>
> The appeal is based on a request that the Court give a verdict of acquittal, . . . based on the fact that my client's position is there was insufficient evidence to sustain a unanimous verdict beyond a reasonable doubt of guilty.
>
> THE COURT: All right. Does the government have a response?
>
> MR. LOEW: Your Honor, the defendant didn't just say that I had the gun and I threw it out the window and I'm a convicted felon and I don't want to say anything more, he affirmatively denied that he was the shooter in this incident. He blamed it affirmatively on the passenger in the car.
>
> Based on that affirmative denial, it's clearly

---

[1] Mr. Perry corrected himself later and advised Judge Haden that the notice of appeal had not yet been filed. Id., at 66.

>within the Court's discretion to deny the defendant acceptance of responsibility.
>
>THE COURT: For that reason I do deny acceptance of responsibility, it is a false denial of relevant conduct and so the total offense level here is a level 30.

Id., at 64-66. Mr. Perry did not dispute Mr. Loew's assertion that Movant had previously blamed the passenger as being the shooter.

Upon careful review of the guilty plea hearing transcript, the PSI, the sentencing transcript, and the exhibits, it appears that the only instances in which Movant "affirmatively denied that he was the shooter" and "blamed it affirmatively on the passenger," were his statement to the State probation officer and his undated handwritten statement (# 154-2, at 6).

By Order entered January 7, 2009 (# 156), the United States was directed to supplement the record with

>(a) such documents as were the basis for AUSA Loew's assertion at the sentencing hearing on September 9, 2002 that Movant "affirmatively denied that he was the shooter in this incident. He blamed it affirmatively on the passenger in the car;" (b) the date that Movant gave his statement to the Kanawha County probation officer (Exhibit A to Mr. Perry's affidavit (# 154-2 at 4); (c) a copy of the letter described in Movant's Response (# 155), including its date; and (d) the full text and date of the hand-written statement which is Exhibit B to Mr. Perry's affidavit (# 154-2, at 5-6).

In its supplemental response (# 157), the United States advised as to (a) that it "cannot definitively state the 'basis' for the statement, and noted that the federal PSI (¶¶ 15, 18, and 26) support the assertion, as well as Movant's statement to the Kanawha County Probation Officer. As to (b), the government

advised that the Kanawha County Probation Officer stated that Movant made the statement on an unknown date between August 27, 2002 and October 10, 2002. As to (c) and (d), the United States responded that these documents are one and the same, and provided the full text, attached as Exhibit A. Neither the United States nor Mr. Perry is able to establish the date it was written. The full text of the statement reads as follows [*verbatim*]:

> What's up Perry thats fucked up you can't come down when the P.S.I. lady comes I can handle it the reason she aint paid you nothing is because she is in the middle of moving this month and she is doing everything by herself right now. I'm putting some good shit together far as for our defense is go fuck you up how I'm laying this shit down trust me Perry. I don't have shit against you it is just that we do not talk thats all. I don't know how you feel about me just like you don't know how I feel about you. I just want to kick somebody ass at court and when I'm finish what I'm doing you go see I want to win and what I got to say you is go believe me yourself. she got to be out the house by the fourth of the month and after she get in another house you is go get paid in full OK. trust me but I will holla at you on a nother date. Peace dewie like your work. Just make me believe in you more thats <u>all</u>. See you!
> /s/ Jeffrey Allen
> Check out what I wrote for defense OK
> [page numbered one]
> look at the facts. on the chase and shooting
> (1) two white law officers said that they were coon hunting and the only gun reportedly in the car was a .22 cal. pistol, no coons found in their truck nor any hunting dogs what kind of coons was they hunting?
> (2) harrassment from the pickup trust driver, by multiple tailgating and passing on the right, on the shoulder of the road.
> (3) when I left I-64, instead of continuing on the road, he followed me out, tailgating all the way.
> (4) why was he so intent on getting beside me in a lowe stretgh of the road at 3:50 in the morning when they were off duty and "tired" from on a hunting trip where they did not harvest any animals.

> (5) the shooting by [the juvenile] was self defense
> warning shots, Conclussion, we were being hunted as a
> game for these two officers who had not caught anything
> all day, they played cat and mouse with us, predators
> always follows the pray, the hunted is always chased by
> the hunter, not the other way around.
>
> And that's when bad luck hit the driver that had been
> tail gating and harrassing us and fliping his head lights
> and passing us on the right, on the shoulder and making
> us run our car to the left side of the road, we were
> afraid that they were trying to harm us and shoot us,
> since they approached us in such a hostile form.
> [page numbered two]
> look at the facts after the shooting.
> (1) the passanger said he saw the passanger in my car do
> the shooting
> (2) [the juvenile] being scared after the shooting he
> dumped the gun in my car unknowing to me.
> (3) when first questioned, he stated he was not with me
> when the shooting happened.
> (4) he had time to conferm with his mom and other friends
> before the police interrogated him the second time, and
> although his mom is a good women a mother will do
> anything to save her son, including advising him on what
> to say to the investigators.
> (5) he also said that he did not have a gun, and did not
> carry a gun.
> (6) A week after that statement, he was arrested with a
> 9mm semiautomatic handgun concealed in his persession,
> that is tough for someone who doesn't carry them, and a
> very fast turn around time to change one habits about
> carrying a gun.
> Conclusion, he used the gun when he was afraid for his
> life as I was for mind.
> He dumped the gun in my car, when I did not see him.
> He lied about being in the car.
> He lied about carrying a gun.
> He lied about not shooting the gun.
> He does normally carry a gun as far as his arrest a week
> later.
> How is this write back so I can know OK good shit what do
> you think?

(# 157-2.)

Movant was given an opportunity to file documents to admit or

13

deny the authenticity and correctness of the government's supplemental information, but he did not file anything.

Movant claims that Mr. Perry told him to lie about the shooting of Dennis Painter; Mr. Perry denies that he did so. The lengthy quotations above establish that Mr. Perry was concerned with protecting Movant's Fifth Amendment privilege against self-incrimination at his State trial, not with shifting blame for the shooting to the juvenile. The juvenile's statement that Movant was the shooter is consistent with the victim's statement that the driver of the vehicle was the shooter. Movant asserts that the letter which he wrote to Mr. Perry and which he claims he read to the Kanawha County probation officer was the suggested tactic of trial counsel. This is unpersuasive because the version of the facts in the letter is inconsistent with the quoted facts reported by the Kanawha County probation officer. Movant's statement to the probation officer that the gun belonged to the juvenile is similarly doubtful because ammunition matching the gun was found in Movant's possession.

Based on the foregoing, the undersigned proposes that the presiding District Judge **FIND** that there is no credible evidence to support Movant's claim that Mr. Perry instructed Movant to lie about the shooting of Dennis Painter, and that Movant was denied effective assistance of counsel in this regard. In further support of this proposed finding, it should be noted that at Movant's re-

14

sentencing hearing after his Booker appeal, on November 1, 2005, his attorney stated that "Mr. Allen does not deny at this point that, in fact, he shot Mr. Painter." (Tr. Disp. Hrng, # 125, at 16.)

Based on the foregoing and the first Proposed Findings and Recommendation filed December 6, 2007, it is respectfully **RECOMMENDED** that the presiding District Judge deny Movant's § 2255 Motion as supplemented and amended and dismiss this matter from the docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall

constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the United States Attorney, Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant, and to transmit it to counsel of record.

    March 20, 2009
         Date

Mary E. Stanley
United States Magistrate Judge